James B. Jermain, Respondent, *v.* The Lake Shore and Michigan Southern Railway Company, Appellant.

Where a dividend upon its stock is declared by a corporation it belongs to the holders of the stock at the time of the declaration, without regard to the source from which, or the time during which, the funds divided were acquired by the corporation.

In 1857 the M. S. & N. I. R. R. Co., to whose rights and obligations defendant succeeded, issued certain preferred and guaranteed stock, the same being entitled to annual dividends of ten per cent, payable out of the net earnings of the company, and also to share *pro rata* with the common stock in any surplus.   No dividends were paid upon said stock until 1863.   Subsequently dividends were regularly declared and paid thereon at the rate specified, and dividends were declared and paid upon the common stock.   The arrears of dividends on the preferred stock were not paid, and no dividend has been declared or funds set apart by defendant to pay the same.   In 1870 forty shares of said preferred stock were purchased by and transferred to plaintiff, and defendant issued to him a certificate therefor.   In an action to compel defendant to declare and pay the dividends in arrears, *held*, that the guaranty related to and was an incident of the stock and passed with it upon assignment thereof ; that although the guaranteed dividends became due in 1864, and payment thereof could have been enforced by the holder of the stock, yet as no part of the net earnings was set apart to pay the same, but, on the contrary, they were otherwise appropriated, the dividends remained payable to the holder, and an assignment of the stock carried with it the right to receive and recover said dividends ; and that, therefore, plaintiff was entitled to maintain the action.

(Argued February 1, 1883 ; decided March 6, 1883.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made February 3, 1882, which reversed a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term.

This action was brought to compel defendant to declare and pay certain dividends alleged to be due and unpaid upon certain preferred and guaranteed stock issued originally by the Michigan Southern and Northern Indiana Railroad Company, which corporation was, in 1869, together with other railway corporations, consolidated and merged in the corporation defendant, which corporation assumed all the obligations and liabilities existing against the original companies.

The court found substantially that, in 1857, said Michigan Southern and Northern Indiana Railroad Company lawfully created and issued $3,000,000 of preferred and guaranteed stock, the holders of which were entitled to receive a dividend or interest in preference to priority over the holders of the

remaining stock, at the rate of ten per cent per annum, payable out of any net earnings of the company, and before any of said net earnings could be applied to the payment of dividends upon the remaining stock; and in case the earnings of the road enabled it to pay more than ten per cent dividend upon all of its stock the guaranteed stock should be entitled to share *pro rata* with the other stock in the excess. Down to July 1, 1863, no dividend was declared on said preferred stock, at which time a semi annual dividend for the six months preceding was declared and paid, and thereafter dividends at the rate specified were regularly declared and paid by said company and by defendant. The company, having accumulated a large surplus of earnings, which might have been applied to the payment of the arrears of dividends on said stock, instead thereof in 1864 and 1865 declared two dividends on the common stock, and paid the same out of said surplus, said dividends amounting to a sum sufficient to have paid all of said arrears, but no portion thereof has ever been paid, and the net earnings of said company and of defendant, its successor, aside · from those appropriated to the payment of the accruing dividends on said preferred stock, have been much more than sufficient to pay said arrears, but have been applied to the payment of dividends on common stock and for other purposes.

Plaintiff claimed to be the owner of forty shares of said preferred and guaranteed stock for which he held a certificate, a copy of which as well as the facts in reference to his title are set forth in the opinion.

*Edward S. Rapallo* for appellant. A dividend declared of the earnings of a company becomes, thereupon, the individual property of the stockholders. (*Hill* v. *Newichawanick Co.*, 8 Hun. 459; 71 N. Y. 593; *Brundige* v. *Brundige*, 65 Barb. 397; 60 N. Y. 544, 548; *Spear* v. *Hart*, 3 Robertson, 420.)

*Lucien Birdseye* for respondents. The right of the stockholder to recover these arrears of dividends, although he did

not become such owner of the stock till after the dividends had accrued in whole or in part, has become *res adjudicata*. (*Boardman* v. *L. S. & M. S. R. Co.*, 84 N. Y. 157, 164, 165, 177; *Hyatt* v. *Allen*, 56 id. 553; *Coey* v. *Belfast and County Down R. R. Co.*, 2 Irish [Ch. S.], 112; *Manning* v. *The Quicksilver Mining Co.*, 24 Hun, 361; *City of Ohio* v. *Clev. & T. R. R. Co.*, 6 Ohio St. 489.) The transfer of the principal carries with it, even although not mentioned or specified, and whether intended by the parties or not, the incidents, the accessories, and securities. (*Martin* v. *Mowlin*, 2 Burr. 969, 978-9; *Green* v. *Hart*, 1 Johns. 580; *Jackson* v. *Willard*, 4 id. 41; *Jackson* v. *Blodgett*, 5 Cowen, 202; *Pattison* v. *Hull*, 9 id. 744; *Langdon* v. *Buell*, 9 Wend. 80; *Craig* v. *Parkis*, 40 N. Y. 181; *Barlow* v. *Myers*, 64 id. 41; *Oneida Bank* v. *Ontario Bank*, 21 id. 490; *Allen* v. *Brown*, 44 id. 228-234.) So the satisfaction of the principal satisfies and discharges all the securities, incidents and accessories. (*Tillotson* v. *Preston*, 3 Johns. 229; *Johnson* v. *Brennan*, 5 id. 268; *Williams* v. *Houghtailing*, 3 Cow. 87; *Stevens* v. *Barringer*, 13 Wend. 639; *Jacobs* v. *Emmett*, 11 Paige, 142; *Martin* v. *Mowlin*, 2 Burr. 969, 979; *Green* v. *Hart*, 1 Johns. 580, 583.) What passed to the purchaser of the stock on his becoming the substituted shareholder was a question of law. (*Austin* v. *Sawyer*, 9 Cow. 39; *Pattison* v. *Hull*, id. 744, 745.) Stockholders in a corporation have no right or title to, or ownership of, or power to transfer, incumber, dispose of, control or enjoy its assets, property, effects, funds, moneys or securities, or any portion thereof, until a dividend is declared, or special authority given by the corporation. (*Town of North Hempstead* v. *Town of Hempstead*, 2 Wend. 109, 135; *Mickles* v. *Rochester City B'k*, 11 Paige, 118, 128; *City of Utica* v. *Churchill*, 33 N. Y. 161, 227; *People* v. *Commissioners of Taxes*, 35 id. 423, 441; *Van Allen* v. *The Assessors*, 3 Wall. [U. S.] 573, 584; *Miller* v. *Ill. Cent. R. R. Co.*, 24 Barb. 312, 330; *In re Wheeler*, 2 Abb. Pr. [N. S.] 361; *Reese* v. *Bank of Montgomery*, 31 Penn. St. [7 Casey] 78;

*Gray* v. *Portland Bank,* 3 Mass. 364; *Coleman* v. *Columbia Oil Co.,* 51 Penn. St. 74; *N. Y. and N. H. R. R. Co.* v. *Schuyler,* 34 N. Y. 30, 80; *McNeil* v. *Tenth Nat. Bank,* 46 id. 325, 331; *Leitch* v. *Wells,* 48 id. 585; *Kortright* v. *Commercial Bank of Buffalo,* 20 Wend. 91 ; 22 id. 348; *State of La.* v. *Bank of La.,* 6 La. [O. S.] 445, 447; [N. S.] 77; *Karnes* v. *Rochester and Genesee R. R. Co.,* 4 Abb. [N. S.] 107; *Kirby* v. *Potter,* 4 Vesey, 748, 757; *Wildman* v. *Wildman,* 9 id. 174, 177; *Rawlings* v. *Jennings,* 13 id. 39, 45; *Rand* v. *Hubbell,* 115 Mass. 461, 474; *Queen* v. *Arnaud,* 9 Ad. & El. [N. S.] 58; E. C. L. 806; *Browne* v. *Collins,* L. R., 12 Eq. Cas. 586.)   Dividends, as such, belong to the party who is the actual, legal and beneficial holder and owner of the shares at the time when the dividends are declared and made payable; and until separated by the vote of the directors from the capital and funds of the corporation and made payable to the shareholder as dividends, they pass upon every transfer, sale, gift, bequest and descent of the stock or shares, and as a mere incident or accessory thereto. (*Cogswell* v. *Cogswell,* 2 Edw. Ch. 231; *Clapp* v. *Astor,* id. 379; *Le Roy* v. *Globe Ins. Co.,* id. 657; *Lowerre* v. *American Fire Ins. Co.,* 6 Paige, 482; *Tifft* v. *Porter,* 4 Seld. 516; *Jones* v. *Terre Haute & Richmond R. R. Co.,* 29 Barb. 353; 57 N. Y. 196; *Hill* v. *Newichawanick Co.,* 8 Hun, 459; 71 N. Y. 593; *Lombardo* v. *Case,* 45 Barb. 95; *Spear* v. *Hart,* 3 Robt. 420; *Currie* v. *White,* 45 N. Y. 822; *Hyatt* v. *Allen,* 56 id. 553; *Smith* v. *American Coal Co.,* 7 Lans. 317; *Re Woodruff's Estate,* 1 Tucker, 58; *Brundage* v. *Brundage,* 60 N. Y. 544.)   The right of the stockholder is perfect to dividends declared while the stockholder is such, and without reference to the source from which, or the time during which, the funds to be divided were acquired by the company. (*Goodwin* v. *Hardy,* 57 Me. 143; *March* v. *Eastern R. R. Co.,* 43 N. H. 515, 520; *Harris* v. *Stevens,* 7 id. 454; *Harvard College* v. *Amory,* 9 Pick. 446; *In re Foote, appellant,* 22 id. 299; *Granger* v. *Bassett,* 98 Mass. 462; *Minot* v. *Paine,* 99 id. 101, 111; *Gifford* v. *Thompson,* 115 id. 178; *Rand* v. *Hubbell,* id. 461,

474 ; *Phelps* v. *Farmers and Mechanics' Bank,* 26 Conn. 272 ; *Jackson* v. *Newark Plankroad Co.,* 31 N. J. L. [2 Vroom] 277 ; *King* v. *Paterson and Hudson R. R. R. Co.,* 5 Dutcher [N. J.], 504 ; *Earp's Appeal,* 28 Penn. St. 368 ; *Reese* v. *Bank of Montgomery County,* 31 id. [7 Casey] 78 ; *Gray* v. *Portland Bank,* 3 Mass. 363 ; *Coleman* v. *Columbia Oil Co.,* 51 Penn. St. 74 ; *Wiltbank's Appeal,* 64 id. 256 ; *Burroughs* v. *N. C. R. R. Co.,* 67 N. C. 376 [2 Am. R. R. Rep. 213] ; *Brightwell* v. *Mallory,* 10 Yerger, 196 ; *Union Bank of Tenn.* v. *The State,* 9 id. 490 ; *The State* v. *Franklin Bank,* 10 Ohio, 90 ; *Collyer* v. *Collyer,* 30 Ohio St. 374 ; *Ryder* v. *Alton and Sangamon R. R. Co.,* 13 Ill. [3 Peck] 516 ; *Lathrop* v. *Lathrop,* 15 Cal. 21 ; *Dow* v. *Gould & Currie Silver Mining Co.,* 31 id. 649 ; *Wilson* v. *Carman,* 2 Vesey, Sr., 672 ; *Pearly* v. *Smith,* 3 Atk. 260 ; *Sherrard* v. *Sherrard,* id. 502 ; *Anson* v. *Twogood,* 1 Jacobs & W. 637 ; *Cuming* v. *Douglas,* 1 Jurist [N. S.], 1005 ; *Clive* v. *Clive,* Kay, 600 ; *Shore* v. *Wheatly,* 3 De Gex & S. 467 ; *Wright* v. *Warren,* 4 id. 367 ; *Mague* v. *Dandeson,* 2 Exch. 741 ; *Fowler* v. *Churchill,* 11 Mees. & W. 57 ; *Bristed* v. *Wilkins,* 3 Hare, 235 ; *Jaques* v. *Chambers,* 2 Collyer, 435 ; *Bartley* v. *Allen,* 2 Jurist [N. S.], 500 ; *Johnson* v. *Johnson,* 15 Jurist, 714 ; 5 E. L. & E. 164 ; *S. C., Murray* v. *Glasse,* 17 id. 816 ; *Feistal* v. *Kings College, Camb.,* 10 Beav. 491 ; *Price* v. *Anderson,* 15 Simons, 473 ; *McLaren* v. *Stainton,* 27 Beav. 460 ; *Wright* v. *Tuckett,* 1 Johns. & Hem. 266 ; *Bates* v. *McKinlay,* 31 Beav. 280 ; *Scholefield* v. *Redfern,* 8 Law Times [N. S.], 487 ; *In re Ezekiel Barton's Trust,* L. R., 5 Eq. Cas. 238 ; *Bagshaw* v. *Eastern Union Ry. Co,* 7 Hare, 114 ; *S. C.,* 13 Jurist, 602, and 27 E. C. 114 ; *S. C.* affirmed, by COTTENHAM, L. Ch., 2 McN. & Gordon, 289 ; *S. C.,* 2 Hall & Twells, 201 ; 14 Jurist, 491 ; *McLaughlin* v. *The Detroit & Milwaukie R. R. Co.,* 8 Mich. 100.) The right of action to compel the specific performance of the guaranty as to the preferred shares, and to prevent the misappropriation of the income from the preferred to common shareholders, did not depend upon either the declaration or the payment of the wrongful dividends on the com-

mon shares. (*Sturge* v. *The Eastern Union R. Co.*, 7 De Gex, McN. & G. 158; 3 Eng. L. & E. 406; *Henry* v. *Great Northern R. Co.*, 3 Jurist [N. S.], part 1, p. 1117; *S. C.*, 1 Kay & J. 1; *S. C.* affirmed on appeals, 3 Jur. [N. S.], part 1, p. 1133; *Crawford* v. *The N. E. R. Co.*, id. 1093; *S. C.*, 3 Kay & J. 723.) Those stockholders who acquired the stock while the original corporation was still in existence, and who continued to hold the stock certificate of that corporation, became invested with all the rights of the original subscribers for the guaranteed stock and of all intermediate holders, down to the time when the same became vested in the present parties in interest. (*Bagshaw* v. *Eastern Union R. Co.*, 2 McN. & Gor. 389; note *a*, p. 389; *Westchester & Philadelphia R. R. Co.* v. *Jackson*, 77 Penn. St. 321; Angell & Ames on Corporations [10th ed.], § 567, and note *a*; *Jones* v. *Terre Haute R. R. Co.*, 29 Barb. 353; *Phelps* v. *Farmers' B'k*, 26 Conn. 269.)

EARL, J. This action was brought to compel the defendant to declare and pay dividends of ten per cent per annum from June, 1857, to February, 1863, upon certain shares of guaranteed stock owned by the plaintiff. The facts in this case are the same as those found in the case of *Boardman* v. *The Lake Shore and Michigan Southern Railway Company* (84 N. Y. 157), except that in that case the certificate of stock was dated November 26, 1862, and in this case it is dated December 12, 1870.

The findings of the court at Special Term in reference to the plaintiff's stock are substantially as follows: That prior to the subscription for the guaranteed stock in May, 1857, some person or persons, then being a holder or holders of shares of stock in the corporation, subscribed for and took a portion of the guaranteed stock, subscribing for — shares and being awarded forty shares thereof, and that he or they afterward paid the price fixed for such shares, and the same were duly allotted to him or them; and that the same were subsequently, upon the day when the plaintiff's certificate of ownership bears date, sold and transferred to him who is now the lawful owner

thereof; that a certificate of ownership of such shares was contemporaneously with such sale delivered to him; such certificate being in the form adopted and used in such cases by the board of directors, as follows:

"The Lake Shore and Michigan Southern Railway Company guaranteed ten per cent stock. This is to certify that J. B. Jermain is entitled to forty shares of $100 each, in the guaranteed capital stock of the late Michigan Southern and Northern Indiana Railroad Company, denominated construction stock. Said stock is entitled to dividends at the rate of ten per cent per annum, payable semi-annually in New York on the first days of June and December in each year, out of the net earnings of the said company; and is also entitled to share *pro rata* with the other stock of the company in any excess of earnings over ten per cent per annum, and the payment of dividends as aforesaid is hereby guaranteed. The said stock is transferable only on the books of the said company in their office in the city of New York, by the said stockholder in person or by his attorney, on the surrender of this certificate. In witness whereof the said company have caused this certificate to be signed by their president and treasurer and countersigned by the registrar at New York this 12th day of December, 1870.

"H. F. CLARK, *President.*

"JAMES H. BANKER, *Treasurer.*"

The court also found that it did not appear that the plaintiff was the owner of the stock, or of any stock at any time prior to December 12, 1870, the date of the certificate; that he did not subscribe for any of the guaranteed stock; that the certificate was the only proof given by him of his ownership of or title to the stock; that it was not proved when or under what circumstances he became the owner of the stock, except that the certificate is dated December 12, 1870; and that it did not appear how, from or through whom he acquired or derived the stock. It appeared, however, that he was recognized as a holder of guaranteed stock by the company, and that he was paid semi-annual dividends upon the stock at the rate of ten per cent an-

nually, from and including August 1, 1870, to and until the trial of this action.

Upon these facts the court at Special Term held that the plaintiff did not acquire title to the payments or dividends due from June, 1857, to February, 1863, and upon that ground alone dismissed the complaint. He appealed to the General Term, and there the judgment against him was reversed and a new trial ordered, and then the defendant appealed to this court.

It appears in the case that the whole of the guaranteed stock of the Michigan Southern and Northern Indiana Railroad Company was subscribed for and issued in 1857, and that it has continued to exist, in whole or in part, until the present time, and that no other ten per cent guaranteed stock was ever issued by that company. Therefore the plaintiff's certificate, upon which the defendant had paid him dividends from its date to the trial of this action, furnished sufficient evidence upon its face as against it, that he had become the owner of forty shares of the guaranteed stock, by succession to one of the original subscribers therefor. That was an inference of fact found by the court at Special Term, and the defendant, in whose favor judgment was there rendered, is not in a position to dispute it here. The plaintiff must, therefore, be treated as a holder of stock which was subscribed for and issued in 1857.

We are thus brought to the sole question of law involved upon this appeal, which is whether treating the plaintiff as the assignee of forty shares of the guaranteed stock on the 12th day of December, 1870, he obtained the right to payment of the dividends which he seeks to enforce in this action.

A person who subscribed for and received the guaranteed stock in 1857 was not simply a stockholder in the company, neither was he simply a contractor with the company holding a contract which entitled him to payments of the guaranteed dividends, but he was both a stockholder and one holding such a guaranty, and the guaranty related to and was an incident of the stock and passed with it to any assignee of the stock. The certificate which evidenced his ownership of the stock also evidenced the guaranty of dividends, and the guaranty was to the person holding the stock.

The certificate issued to the plaintiff was not itself the stock, but only the evidence thereof.   The stock had been in existence from the time it was issued in 1857, owned, if it had been from time to time transferred, by the successive transferees thereof.   A share of stock represents the interest which the shareholder has in the capital and net earnings of the corporation.   The interest is of an abstract nature, that is the shareholder cannot by any act of his, nor ordinarily by any act of the law, reduce it to possession.   He can take, and is entitled to take, the surplus profits when a dividend has been declared by the proper officers of the corporation, and upon dissolution of the corporation he can take his share of the assets thereof left for distribution, *pro rata,* among the shareholders.   The corporation represents the whole body of the shareholders and to it, before a dividend has been declared, belong, *in solido,* all the assets in which the shareholders, as such, are interested.   When a dividend has once been declared out of net earnings, the amount of such dividend is no longer a part of the assets of the company, but is appropriated or set apart for the shareholders.   They receive credit for the dividends and the corporation simply holds them as their trustee.   Therefore, before a dividend has been declared, a share of stock represents the whole interest which the shareholder has in the corporation, and when he transfers his stock he transfers his entire interest, and dividends subsequently declared, without reference to the source from which or the time during which the funds divided were acquired by the corporation, necessarily belong to the holder of the stock at the time of the declaration.   But when the dividend has once been declared and credited to the shareholder, the amount thereof has been separated from the assets of the corporation and been appropriated to his use.   It is then no longer represented by his stock, and is no longer an incident thereof; and hence when he transfers his stock he does not transfer his dividend, which remains subject to his control.

But the claim on the part of the appellant is, that inasmuch as these guaranteed dividends were payable in 1864, long

before the transfer of any stock to this plaintiff, they are to be treated as dividends then declared, and therefore payable to the person who then held the stock; that in 1864, by reason of the existence of net earnings sufficient to make the guaranteed dividends, the right to such dividends became vested in those then holding the guaranteed stock; that the net earnings then on hand representing the amount due for the guaranteed dividends were no longer a part of the capital or assets of the corporation, and that the right to them ceased to be an incident of the stock. This reasoning does not satisfy us. These net earnings were in no way set apart or appropriated for the benefit of the holders of the guaranteed stock. They were not even held by the company. The right of the guaranteed shareholders was repudiated and denied, and the net earnings were otherwise appropriated. They were no more legally appropriated to the payment of the guaranteed dividends than the property of a debtor is in law appropriated to the payment of debts which he refuses to recognize. The dividends, therefore, remained payable upon the stock to the holders of the stock. It matters not that payment could have been enforced by the holder of this stock; he did not then enforce it, and did not receive payment. He did not, so far as appears in the case, in any way separate his right to dividends from the stock as an incident thereto. It remained like interest payable upon any obligation which had not been paid, but which was due. An assignment of the obligation in such a case carries with it the right to receive the over-due interest, the interest being an incident of the obligation.

Interest after it becomes due may be assigned to one person, and the principal obligation may be assigned to another, as the owner of this stock could have assigned these guaranteed dividends to one person and the stock to another; but until he did so or did some act to separate the guaranteed dividends from the stock, a sale or assignment of the stock carried with it a right to the dividends, as an incident thereto. This conclusion is sustained by many analogies in the law, is believed to be in accordance with the common understanding

and practice in such cases, and is, we think, quite fully sustained by the opinion in *Boardman* v. *The Lake Shore and Michigan Southern Railway Co.* In that case the plaintiff did not become the owner of his stock until 1862, and yet he was held entitled to recover the guaranteed dividends from 1856 until 1863, without any other assignment to him except the assignment of the stock from the persons who held it from 1857 down to the date of the assignment to him. We do not think it is a material circumstance distinguishing that case from this, that there the plaintiff became the owner prior to 1864, whereas in this case the plaintiff became the owner after 1864. In each case the dividend was payable by virtue of the guaranty. It is true that in the prior case there was no dividend due or enforceable at the time the plaintiff took his stock, whereas there was a dividend due and enforceable at the time this plaintiff took his stock. But in both cases the dividend is due by virtue of the contract, a contract connected with, and parcel of the contract which entitles the holder to his stock. In the *Boardman Case* Miller, J., said: " Conceding that the right of the plaintiffs depends upon a contract, that contract is connected with, relates to, and constitutes an integral part of the plaintiffs' rights as a stockholder. It cannot be separated from the rights accruing by virtue of the stock which the plaintiffs hold ; and being thus a part and parcel of the same, it passes with the transfer as one of the incidents, and as composing an essential element thereof. A sale or assignment of the stock transferred by operation of law, all benefits to be derived from the same and all profits, income or dividends or right to dividends by contract which formed a constituent, valuable and inseparable portion of the stock. When the contingency happened, specified in the contract, the right to dividends became fixed, and existed independent of any act of the corporation, or its officers. It became absolute and perfect in the stockholder, without a declaration to that effect, and passed as an incident of the stock upon the transfer." Again, " we think it cannot be maintained, upon any sound principle, that the contract for the payment of dividends con-

tinues to each stockholder only during the time he holds the stock and accrues only to his benefit during that period, and that a separate and distinct assignment of the dividends was essential in order to confer title upon the owner." The case of *Manning* v. *The Quicksilver Mining Co.* (24 Hun, 361) is a case precisely in point. There the owner of certain preferred shares of stock in a mining company, after having sold the same and delivered the certificates thereof to one person, assigned to another all his right, title and interest in and to the interest due upon the assigned shares of stock, which he had previously owned. By the terms of the certificates interest was guaranteed to be paid annually, but out of the net earnings of each year, providing so much in the year preceding had been earned. It did not appear that there had been any separation of this interest from the other assets of the company, or that any of the earnings of the company had been assigned to the payment of the interest, and it was held that the right to recover the interest was merely an incident to the shares themselves, and depended upon the title thereto, and that the assignee of the interest could not maintain an action to recover the interest or compel the company to account therefor.

We are, therefore, of the opinion that the decision of the General Term is right, and should be affirmed, and judgment absolute ordered against the defendant, with costs.

All concur, except ANDREWS and RAPALLO, JJ., taking no part.

Order affirmed and judgment accordingly.